AKINS LAW FIRM, P.C. d/b/a AKINS,
HUNT & FEARON, P.C., d/b/a THE
LAW OFFICES OF AKINS, HUNT &
FEARON, P.C., and successor in
interest to THE LAW OFFICES OF
AKINS, HUNT & FEARON, P.L.L.C.
and THE LAW OFFICES OF
WAVERLY F. AKINS,

     PLAINTIFF,

VS.

LAW OFFICES OF JOHN W. AKINS,
PLLC, and JOHN W. AKINS,
Individually,

     DEFENDANTS.

FILED
SEP 3 0 2005
FRED L. BORCH III, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP. CLK

<u>COMPLAINT</u>
(JURY TRIAL DEMANDED)

NOW COMES PLAINTIFF, by and through undersigned counsel, and

complains of defendants as follows:

I.    <u>SUMMARY OF COMPLAINT</u>

Plaintiff has been deprived of the benefit of its exclusive right to certain

distinctive service marks and trade names, robbed of valuable interstate and

intrastate business opportunities, and caused to suffer loss and damage by virtue

of a false and deceptive course of action employed by defendants to mislead the

public as to the source, nature, history, origin and sponsorship of defendants'

legal services. At the core of their unlawful scheme, defendants have sought to

confuse and have actually confused the general public by regularly, consistently

and steadily utilizing artifices and instrumentalities of interstate commerce to

infringe upon plaintiff's trade name and service marks resulting in the

misappropriation of plaintiff's customers, clients and business. This action is commenced to recover these losses and bring about a cessation of defendants' conduct in this regard.

## II.    PARTIES.

A.    The Plaintiff.

1.    Plaintiff Akins Law Firm, P.C. is a North Carolina professional corporation whose principal business address is located in Fuquay-Varina, North Carolina. Plaintiff currently operates its business utilizing the trade and service name of Akins, Hunt & Fearon, P.C. Plaintiff is the successor in interest to and the assignee of The Law Offices of Akins, Hunt & Fearon, P.L.L.C., a dissolved North Carolina professional limited liability company and The Law Offices of Waverly F. Akins, a sole proprietorship. At all times referenced within this complaint, plaintiff engaged and continues to engage in the general practice of law to include matters such as litigation, real estate transactions, estate planning, and commercial transactions. Plaintiff's services in this regard have been performed in North Carolina and in other states throughout the United States of America.

B.    The Defendants.

2.    Defendant Law Offices of John W. Akins, PLLC is a North Carolina professional limited liability company whose principal business address is located in Fuquay-Varina, North Carolina. Like plaintiff, defendant Law Offices of John W. Akins, PLLC engages in the general practice of law in many of the same

fields in which plaintiff competes to include, but not limited to, real estate and commercial transactions.

3.    Defendant John W. Akins is an individual, citizen and resident of Wake County, North Carolina. Defendant John W. Akins is a licensed attorney and the sole member-manager of defendant Law Offices of John W. Akins, PLLC.

### III.    JURISDICTION.

#### A.    Subject Matter Jurisdiction.

4.    The United States District Court for the Eastern District of North Carolina has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§1125 and 116, which vest in the district courts original jurisdiction over all civil actions arising under the Lanham Act when any person is damaged in connection with a competitor's offering of services in the stream of interstate commerce that contain false and misleading designations of origin and when a competitor infringes upon the service marks and trade name of another.

5.    The United States District Court for the Eastern District of North Carolina has supplemental jurisdiction over the subject matter of the state law claims asserted herein pursuant to 28 U.S.C. §1367(a) in that they have arisen from the same operative facts and on the basis that the state law claims are so related to the claims over which the district court has original jurisdiction as to constitute the same case or controversy.

B.    Personal Jurisdiction.

6.    The United States District Court for the Eastern District of North Carolina has personal jurisdiction over defendants by reason of defendant Law Offices of John W. Akins, PLLC being a domestic professional limited liability company physically located in Wake County, North Carolina, by reason of defendant John W. Akins being a citizen and resident of Wake County, North Carolina, and by reason of the fact that the acts and omissions of which plaintiff complains occurred largely within Wake County, North Carolina.

C.    Venue and Division.

7.    The Western Division of the United States District Court for the Eastern District of North Carolina is the proper venue and division for this action pursuant to 28 U.S.C. §1391(b), 28 U.S.C. §1391(c), and Local Rule 40.1 in that defendant Law Offices of John W. Akins, PLLC is a domestic professional limited liability company physically located in Wake County, North Carolina, that defendant John W. Akins is a citizen and resident of Wake County, North Carolina, and that both defendants have and maintain their most significant contacts there.

IV.    FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF.

A.    General Summary of Facts.

8.    Waverly F. Akins was a well-respected and life-long citizen, resident, attorney, developer and civil servant who resided in Fuquay-Varina, Wake County, North Carolina. From the early 1960's until his death in 1997, Waverly F. Akins operated a general practice law firm from offices located in

Fuquay-Varina, North Carolina. Though defendant John W. Akins is the son of Waverly F. Akins, defendant John W. Akins never had any professional association with his father's business, any of his successors in interest, any of his assignees, or with plaintiff.

9.    Throughout his legal career, Waverly F. Akins developed, employed and consistently utilized the service name "The Law Offices of Waverly F. Akins" to identify his business and to differentiate his services from those offered by other law firms with whom he competed. This service mark appeared in various business documents created and utilized by Waverly F. Akins to include, but not limited to, letterhead, business cards, envelopes, exterior business signs, marketing collateral and the like (hereinafter "the Akins Marks"). The Akins Marks were and remain unique, distinctive and well-known.

10.    In or around 1995, Waverly F. Akins, Donald G. Hunt, Jr. and Jason M. Fearon elected to form "The Law Offices of Akins, Hunt & Fearon, P.L.L.C.," a North Carolina professional limited liability company. When it was formed, Waverly F. Akins d/b/a The Law Offices of Waverly F. Akins transferred and conveyed all of his right, title and interest in the Akins Marks to the professional limited liability company. The Law Offices of Akins, Hunt & Fearon, P.L.L.C. derived additional service marks and trade dresses from the Akins Marks and regularly utilized them in the operation and conduct of its business.

11.    On or about November 19, 1997, Waverly F. Akins died unexpectedly as the result of an accidental head injury sustained in a fall at his residence. Following the death of Waverly F. Akins, the professional limited

liability company continued to utilize the Akins Marks and their derivatives in the operation and conduct of its business. By way of representation, the professional limited liability company continued to prominently display and utilize the names "Akins" and "Waverly F. Akins" in virtually all of its letterheads, business cards, marketing materials and the like.

12.     In or around January 2001, the member-managers of The Law Offices of Akins, Hunt & Fearon, P.L.L.C. formed the plaintiff professional corporation and assigned, transferred and conveyed, among other things, the Akins Marks and their derivatives to plaintiff. From that time and continuing through the present, plaintiff has been the owner of the Akins Marks and has consistently utilized the Akins Marks in the conduct of its business under the trade names The Law Offices of Akins, Hunt & Fearon, P.C. and Akins, Hunt & Fearon, P.C. The Akins Marks have acquired secondary meaning and are reasonably associated with the legal services offered by plaintiff.

13.     In or around the summer of 2001, defendant John W. Akins elected to form and operate a sole proprietorship under the name Law Offices of John W. Akins. At that time, defendant John W. Akins approached the shareholders, directors and officers of plaintiff and requested that they cease using the Akins Marks. When plaintiff declined defendant's request, defendant John W. Akins opened a competing law firm from the same premises formerly occupied by plaintiff and Waverly F. Akins.

14.     In or around October 2001, defendant John W. Akins, operating as a sole proprietor, misappropriated, copied, employed and otherwise utilized the

Akins Marks. By way of representation, defendant copied almost identically the letterhead, envelopes, and other marks of plaintiff, and defendant John W. Akins made numerous false, misleading and deceptive statements to the public concerning the source, origin, relationship and sponsorship of the services provided by him and those provided by plaintiff. In particular, defendant John W. Akins deliberately employed infringing marks and made statements to mislead the consuming public as to a professional affiliation between himself, the late Waverly F. Akins, and plaintiff.

15.     On or about August 3, 2003, defendant John W. Akins formed defendant Law Offices of John W. Akins, PLLC. From that time and continuing through the present, defendants have continued to misappropriate, copy, employ and otherwise utilize and infringe upon the Akins Marks and their derivatives, and they have continued to make false, misleading and deceptive statements to the public concerning the source, origin, relationship and sponsorship of the services provided by him and those provided by plaintiff.

16.     By design, defendants have confused the consuming public into believing that their services are associated with, sponsored by and otherwise related to the services offered by plaintiff and its predecessors in interest. Defendants have transmitted knock-off versions of the Akins Marks and made false statements that concerning plaintiff's services and defendants' own services throughout interstate commerce. These communications were made via the United States mail, wire communications, oral representations, and the like. Defendants' misconduct in this regard has achieved the desired effect:

Defendants have confused persons within and without the State of North Carolina to do business with defendants when these customers preferred to utilize the services of plaintiff. Defendants' misconduct in misappropriating and infringing upon the Akins Marks has had its largest impact in the area of real estate closing transactions.

   B.   Waverly F. Akins.

   17.   Waverly F. Akins was born in 1932, and, for virtually his entire life, Mr. Akins resided in Fuquay-Varina, Wake County, North Carolina.

   18.   After graduating from the University of North Carolina School of Law in the early 1960's, Waverly F. Akins joined the Federal Bureau of Investigation (FBI) where he spent several years assisting in the investigation and prosecution of federal crimes.

   19.   In or around 1964, Waverly F. Akins left his employ with the FBI and pursued the general private practice of law in Fuquay-Varina. From this time until his death in 1997, Waverly F. Akins engaged in the private practice of law providing legal services in the context of civil and criminal litigation, appeals, real estate closing transactions, and the like.

   20.   By at least 1968, Waverly F. Akins founded a sole proprietorship that transacted business under the name "The Law Offices of Waverly F. Akins." At that time and continuing into the future, Waverly F. Akins spent substantial time, effort and expense in developing a unique system relating to the promotion, development and operation of his business. Waverly F. Akins became known as (and is still regarded as) a skilled, compassionate, and reliable legal advocate,

and the Akins Marks acquired secondary meaning in that members of the consuming public readily associated the Akins Marks with a single source and origin.

21.     To identify the source, origin and sponsorship of his services and to distinguish himself and his services from those established, offered or sold by others, Waverly F. Akins created and extensively utilized the Akins Marks which consist of certain non-functional trademarks, service marks, trade names, letterheads, emblems and indicia of origin including, but not limited to, the trade name "The Law Offices of Waverly F. Akins."

22.     Throughout his life, Waverly F. Akins continuously and extensively utilized the Akins Marks in interstate commerce in connection with the promotion and sale of the services he offered throughout the United States, including the State of North Carolina. Waverly F. Akins transmitted the Akins Marks through the United States mails, wire communications, newspaper publications and the like from the time of their creation until his death.

23.     Throughout the 1960's and 1990's, Waverly F. Akins worked with, trained and acted as mentor for many other attorneys who formerly worked or presently work in the Wake County community. From time to time, Waverly F. Akins formed various partnerships and other business relationships with these attorneys. During these years, Waverly F. Akins continuously and extensively utilized versions of the Akins Marks to identify the source, origin and sponsorship of his services and to distinguish himself and his services from those established, offered or sold by others. Further, when these business entities ceased

conducting business, Waverly F. Akins continued to revert to and utilize the Akins Marks to promote his legal services and to distinguish himself and his services from those offered by his competitors.

24.     From 1969 until 1978, Waverly F. Akins served as county commissioner for the Wake County Board of Commissioners, and he served as its chairman from 1970 until 1974. In 1974, Waverly F. Akins resigned his position as chairman and became the president of the North Carolina Association of County Commissioners.

25.     During his tenure as a commissioner, Waverly F. Akins became well-known throughout the Wake County community and the United States, and he was respected as an energetic, progressive, and faithful civil servant. Among his many accomplishments as a county commissioner, Waverly F. Akins successfully oversaw the merger of the Raleigh and Wake County School systems, the financing and construction of the County's infrastructure, the acquisition of the current Wake County Office Building and the revitalization of the board's committee system. This notoriety increased the recognition, value and association of the Akins Marks.

26.     In 1976, Waverly F. Akins launched an unsuccessful state-wide bid for the office of North Carolina Lieutenant Governor. This campaign further increased the recognition, value and association of the Akins Marks.

27.     In addition to his legal and political career, Waverly F. Akins acquired and developed vast land holdings throughout North Carolina. Over his lifetime, Waverly F. Akins successfully purchased, owned, developed and sold

thousands of acres of residential, commercial and agricultural real property. His work in the field of real estate further increased the recognition, value and association of the Akins Marks.

28. Tragically, Waverly F. Akins died on November 19, 1997 as the result of brain injuries he sustained from a fall in his residence. Following his death, Waverly F. Akins' good name and legacy lived on. By way of example, but not limitation, the Wake County Office Building, located directly next door to the Wake County Courthouse, was posthumously named "The Waverly F. Akins Wake County Office Building," and this building continues to display numerous plaques displaying the name Waverly F. Akins and a memorial plaque describing his achievements.

C. Plaintiff's Acquisition, Ownership and Use of the Akins Marks.

29. In or around late 1995, Waverly F. Akins, Donald G. Hunt, Jr. and Jason M. Fearon formed a professional limited liability company under the name "The Law Offices of Akins, Hunt & Fearon, P.L.L.C." At that time, Waverly F. Akins transferred, assigned and conveyed all of his right, title and interest in and to the Akins Marks to the new professional limited liability company, and the new professional limited liability company became the successor in interest to The Law Offices of Waverly F. Akins.

30. At the time of conveyance, Waverly F. Akins had the exclusive right to use the Akins Marks and all derivations thereof, and the professional limited liability company rightfully and lawfully obtained the exclusive right to use the Akins Marks and derivations thereof.

31.     From 1995 and continuing until January 2001, the professional limited liability company consistently used the Akins Marks and derivations thereof as the marks and trade identity by which the services offered, performed and sold by the professional limited liability company were distinguished from other similar businesses and the services offered, performed or sold by them. During this time, the Akins Marks continued to enjoy and gain secondary meaning.

32.     From 1995 and continuing until January 2001, the professional limited liability company extensively utilized the Akins Marks to advertise and promote the business and the services it offered through various media. As a result of these efforts and the considerable money spent in connection therewith, the services offered by the professional limited liability company and associated with the Akins Marks became well known in the legal community. The professional limited liability company and the Akins Marks were met with widespread public approval, and they have established demand and goodwill among relevant consumers. Further, the Akins Marks have been an integral key to the financial success of the professional limited liability company.

33.     In or around January 2001, the certified public accountants hired by the professional limited liability company advised its managing members to convert the business to a professional corporation. Following this advice, the member-managers of The Law Offices of Akins, Hunt & Fearon, P.L.L.C. formed plaintiff Akins Law Firm, P.C. At that time, the member-managers caused the professional limited liability company to transfer, convey and assign all of its right

title and interest in the Akins Marks to the newly formed professional corporation. Since the time of its formation, plaintiff has at all times operated its business under the names "The Law Offices of Akins, Hunt & Fearon, P.C." or "Akins, Hunt & Fearon, P.C." Plaintiff is the successor in interest to and assignee of The Law Offices of Akins, Hunt & Fearon, P.L.L.C. and The Law Offices of Waverly F. Akins.

34. At the time the Akins Marks were conveyed, the professional limited liability company had the exclusive right to use the Akins Marks and derivations thereof, and plaintiff rightfully and lawfully obtained the exclusive right to use the Akins Marks and derivations thereof.

35. From 2001 and continuing through the present, plaintiff has consistently used the Akins Marks as the marks and trade identity by which the services offered by plaintiff are distinguished from other similar businesses and the services offered or sold by them. Plaintiff and the Akins Marks have been met with widespread public approval, and they have established demand and goodwill among relevant consumers. Further, the Akins Marks have been an integral key to the financial success of plaintiff.

36. From 2001 and continuing through the present, plaintiff has extensively utilized the Akins Marks to advertise and promote its business and the services it offers through various media to include, but not limited to, newspaper advertisements, yellow page entries, mail pieces, business signs, press releases, newspaper articles and the like. As a result of these efforts and the considerable money and work spent in connection therewith, the services

offered by plaintiff and associated with the Akins Marks continue to be well known in the legal community. Plaintiff and the Akins Marks continue to be met with widespread public approval, and they have established demand and goodwill among relevant consumers.

37.     Attorneys employed by plaintiff have been fortunate to have been hired and retained to provide legal services throughout the State of North Carolina and in many other states within the United States. As part of that work, plaintiff has caused the Akins Marks to enter interstate commerce and thus further enhanced the value, notoriety and good will associated with the Akins Marks and with plaintiff. Plaintiff's work in this regard has, on occasion, garnered unsolicited media coverage.

38.     Attorneys employed by plaintiff have been fortunate to have been able to cultivate long-standing and valuable relationships with commercial entities that operate in the field of real estate closing transactions. Among other things, plaintiff has been pre-approved by various lenders and title insurance companies, within and without the State of North Carolina, to perform real estate closing transactions. As part of that work, plaintiff has caused the Akins Marks to enter interstate commerce thus further enhancing the value, notoriety and good will associated with the Akins Marks and plaintiff.

39.     Attorneys employed by plaintiff have many years of experience in the field of litigation and appeals, and they have been fortunate to have obtained extremely favorable results for some of their clients. This has in turn resulted in plaintiff, its attorneys and the Akins Marks being reported in publications such as

North Carolina Lawyer's Weekly, The News & Observer and other publications. Attorneys employed by plaintiff, as the result of this notoriety, are regularly consulted by other attorneys practicing law within and without the State of North Carolina. One of the attorneys employed by plaintiff is a member of the Million Dollar Advocates Forum, a national organization that, among other things, promotes and provides a national network for attorneys throughout the country who have obtained verdicts exceeding One Million and 00/100 Dollars (>$1,000,000.00). This too has resulted in plaintiff and the Akins Marks entering interstate commerce and further enhancing the value, notoriety and good will associated with the Akins Marks and plaintiff.

40.    From the 1980's and continuing through October 2001, Waverly F. Akins, The Law Offices of Akins, Hunt & Fearon, P.L.L.C. and plaintiff operated their business from offices located at 205 S. Fuquay Avenue, Fuquay-Varina, North Carolina – a building owned by Waverly F. Akins and thereafter owned by his heirs. This principal place of business consisted of a unique and distinctive Victorian style building known as "The Edwards House." At all times, plaintiff's place of business was prominently marked with a unique exterior sign bearing the name "The Law Offices of Akins, Hunt & Fearon, P.L.L.C."

41.    From 1995 and continuing through the present, plaintiff has developed and utilized unique non-functional marks and designations in the form of stationery, letterhead, business cards, and other media to identify its business and the services it provides and to differentiate its business and services from those offered by its competitors.

42.     In or around 1996, the predecessor professional limited liability company commissioned an artist to create a unique non-functional logo to identify plaintiff and its business and to differentiate its business and services from those offered and sold by its competitors. This logo was transferred, conveyed and assigned to plaintiff in 2001. The logo commissioned and paid for by plaintiff and its predecessor depicts a scale of justice that slants slightly in a downward diagonal from top left to bottom right. Since 1996, plaintiff and its predecessor have utilized its logo to identify plaintiff and its business and to differentiate its business and services from those offered by its competitors.

43.     Following the death of Waverly F. Akins, plaintiff and its predecessor added a unique non-functional memoriam to its letterhead, stationery and other marketing collateral honoring the late Waverly F. Akins and promoting his former association with plaintiff. In particular, since 1997, all of plaintiff's letterhead and most all of plaintiff's other marketing collateral has borne and continues to bear the following notation: "Waverly F. Akins, 1932 – 1997." The memoriam developed and utilized by plaintiff and its predecessor has been utilized to identify plaintiff and its business and to differentiate its business and services from those offered by its competitors. Given the notoriety, achievements and body of work established by Waverly F. Akins during his lifetime, the name Waverly F. Akins and professional association with the name Waverly F. Akins have commercial value.

44.     Entering into the summer of 2001, plaintiff, the Akins Marks and were (and remain) well known and had (and still maintain) secondary meaning. In

particular, plaintiff, the Akins Marks and plaintiff's trade dress are reasonably associated with quality, competent, reliable and professional legal services. The plaintiff law firm is well known in its community and in other parts of the United States, and the success of plaintiff in its chosen profession has resulted, in large part, from the work of its attorneys, the Akins Marks and its unique trade name and service marks.

45.     Unfortunately, the good will, solid reputation and notoriety associated with plaintiff, its attorneys, its service marks and the Akins Marks became known to defendants, and, since October 2001, defendants have engaged in an intentional course of conduct, overt and clandestine, to misappropriate and infringe upon the Akins Marks and plaintiff's trade dress.

D.     Defendants' Misappropriation and Infringement of Plaintiff's Trade Dress and the Akins Marks.

46.     Following a failed foray as a real estate sales agent in Fuquay-Varina, North Carolina, defendant John W. Akins enrolled in and attended law school in the State of Massachusetts. After graduating in 2000, defendant John W. Akins became licensed to practice law in the State of North Carolina.

47.     After becoming licensed, defendant John W. Akins began working as an assistant attorney with the Office of the Wake County District Attorney. At that time, defendant John W. Akins announced that he had no intention to engage in the practice of law in the Fuquay-Varina community.

48.     In the summer of 2001, plaintiff advised the heirs of Waverly F. Akins that, in September 2001, they would be moving their offices to a new building located approximately three blocks from the offices they were then

renting. Shortly thereafter, defendant John W. Akins hatched a scheme to take advantage of the good will associated with plaintiff and its marks by opening his own competing law firm in plaintiff's former place of business and by misappropriating plaintiff's service marks and the Akins Marks.

49.     On several occasions, defendant John W. Akins approached the shareholders, directors and officers of plaintiff and announced his intention to open his own law firm. At these times, defendant John W. Akins requested that plaintiff cease using the name "Akins" as part of its service name and identifying marks. In explaining his request, defendant Akins represented that he believed the general public may become confused as the result of two law firm's operating in close proximity to one another both using the name "Akins."

50.     On multiple occasions, plaintiff advised defendant John W. Akins that, in the years following the death of Waverly F. Akins, substantial good will had been developed and was associated with and derived from the Akins Marks, and that plaintiff would not honor his requests. Defendant John W. Akins was further advised that, if anything, removing the Akins' designation and the Akins Marks from plaintiff's trade dress would lead to even greater confusion among members of the public in that defendant John W. Akins intended to occupy plaintiff's former place of business. Specifically, and without limitation, plaintiff advised defendant John W. Akins that members of the public would likely draw the erroneous conclusion that the attorneys working for the plaintiff law firm had simply split up and that an experienced attorney who formerly worked with

Waverly F. Akins was conducting business from plaintiff's old business address –
all of which would not be true representations of actual facts.

51. In or around the summer of 2001, defendant John W. Akins, without
the knowledge of plaintiff, actively solicited plaintiff's secretarial staff for the
purpose of working for his new law firm. Defendant John W. Akins solicited
plaintiff's staff with the intention of confusing the public by making it appear that
defendant John W. Akins was associated with or was a mere continuation of
plaintiff, The Law Offices of Akins, Hunt & Fearon, P.L.L.C. and The Law Offices
of Waverly F. Akins.

52. Starting in the summer of 2001 and continuing through the present,
defendant John W. Akins made and continues to make statements to members
of the public that his law firm is a mere continuation of the practice developed
and maintained by Waverly F. Akins. Defendant John W. Akins has made these
statements for the express purpose and intent of confusing the public and
misappropriating plaintiff's good will, clients and business.

53. In the summer of 2001, defendant John W. Akins obtained a key to
plaintiff's place of business, and, for several months, defendant John W. Akins
entered plaintiff's place of business – often when plaintiff's office was closed and
members of plaintiff's staff were not present. Upon information and belief, during
one or more of these entries, defendant John W. Akins gained access to
plaintiff's business documents including, but not limited to, records that depicted
or otherwise contained the Akins Marks.

54. In early August 2001, plaintiff advised defendant John W. Akins that, due to a construction delay, plaintiff may need additional time to vacate its former place of business. In response to plaintiff's representations, defendant John W. Akins stated that plaintiff could have as long as plaintiff wanted to move on the condition that plaintiff cease using the name "Akins" and the Akins Marks. Plaintiff declined defendant John W. Akins' offer.

55. On or around October 1, 2001, plaintiff vacated its former place of business as planned, and, at that time, defendant John W. Akins opened his own law firm in the offices formerly occupied by plaintiff under the trade name "The Law Offices of John W. Akins." At the time of plaintiff's move, plaintiff removed from its former place of business all of its records, files, and documents – including those associated with Waverly F. Akins and those depicting the Akins Marks.

56. Starting in early October 2001 and continuing through the present, defendant John W. Akins undertook and continues to undertake intentional actions to misappropriate, copy, and utilize plaintiff's service name and the Akins Marks. Further, during these same times, defendant John W. Akins has engaged in intentional acts designed to confuse the general public by making statements that his law firm is a mere continuation of the law practice founded by Waverly F. Akins and owned by plaintiff. By way of representation, but not limitation, defendant John W. Akins has taken the following overt and clandestine actions:

A. Defendant John W. Akins elected to conduct his sole proprietorship business under the trade name "The Law Offices of John W. Akins." Defendant

John W. Akins thereafter elected to conduct his professional limited liability company under the trade name "Law Offices of John W. Akins, PLLC." Each of these names and designations that are nearly identical to the trade name and service marks utilized by Waverly F. Akins and plaintiff.

B.    Defendant John W. Akins copied, almost identically, the letterhead, stationery, business cards and other marks utilized by Waverly F. Akins and plaintiff. In fact, so slavish is defendant John W. Akins' conduct in this regard, the letterhead, business cards and other marks utilized by him are nearly exact replicas of the Akins Marks. To further confuse the public, defendant John W. Akins utilizes the e-mail address "akinslawoffices@nc.rr.com," and defendant John W. Akins formerly constructed and maintained a website with nearly an identical domain name.

C.    Defendant John W. Akins commissioned the construction of an exterior sign in almost the exact color of the sign formerly utilized by plaintiff bearing the slogan "The Law Offices of John W. Akins" – almost the exact name that appeared on plaintiff's predecessor sign. To further draw a false, misleading and deceptive association between himself on the one hand and plaintiff and the Akins Marks on the other, defendant John W. Akins even employed a scale of justice logo that is closely similar to plaintiff's logo.

D.    Defendant John W. Akins, on occasion, has solicited, hired and employed former staff of plaintiff for no other reason than to give the appearance of an association between himself and plaintiff.

E.    Defendant John W. Akins has given interviews to one or more news organizations making repeated references to Waverly F. Akins and further stating (falsely) that defendant John W. Akins was continuing the law practice developed by Waverly F. Akins and owned by plaintiff. In one such article, defendant John W. Akins is depicted seated in the very office formerly utilized by Waverly F. Akins seated at his old desk. Defendant John W. Akins intentionally selected this location over all others to further confuse the public as to the origin, source and sponsorship of his business and to fool the public into believing that a professional association existed between defendant John W. Akins and plaintiff.

F.    When asked about plaintiff's law firm, defendant John W. Akins has, on several occasions, told members of the public that he is continuing the law practice that was established by Waverly F. Akins.

G.    When members of the public have erroneously contacted defendant John W. Akins seeking to do business with plaintiff, defendant John W. Akins, upon information and belief, has misappropriated these customers and clients by making false, misleading and deceptive representations concerning the origin and affiliation of his law practice.

57.    It gets worse. On several occasions, defendant John W. Akins has received actual real estate closing packages that were addressed to and directed for plaintiff. Rather than forwarding these documents and referring these customers and clients to plaintiff, defendant John W. Akins instead kept these closing packages, had lenders and others address the closing packages to him, performed the closings, and obtained and kept the compensation associated with

these transactions. Further, when former members of plaintiff's staff (who were then employed by defendants) noticed this problem and re-routed closing packages to plaintiff, defendant John W. Akins became incensed, instructed his staff to keep all such closing packages for his commercial benefit in the future, and threatened adverse employment action if these directives were not followed.

58.    On at least one occasion, a closing package for one of plaintiff's long-standing clients was erroneously sent to defendant John W. Akins. When plaintiff's client discovered the discrepancy and demanded that the transaction be forwarded to plaintiff, defendant John W. Akins initially refused to do so. When this client persisted, defendant John W. Akins stated that he would only transfer the closing package to plaintiff on the condition that compensation be paid to defendant John W. Akins by the client or by plaintiff.

59.    Defendant John W. Akins has failed to undertake any reasonable measures to correct the confusion that he has created in the marketplace; in fact, defendant has taken action to exacerbate it. By way of example, on at least one occasion, one of plaintiff's clients scheduled an appointment to meet with one of plaintiff's attorneys. This client mistakenly went to the office maintained by defendant John W. Akins. When the client arrived, the client was confused by the overall appearance of defendants' office and waited for a period of time before she learned that she was in the wrong place. This experience is not in any way uncommon to similar situations where clients wishing to meet with one of plaintiff's attorneys has been confused by defendants' infringing marks. Continuing through the present, plaintiff's clients call defendants' office to speak

with plaintiff's attorneys and go to defendants' office wanting to meet with plaintiffs' attorneys and vice versa. Further, though defendant John W. Akins has received and continues to receive mail and other correspondence clearly meant for plaintiff, defendants refuse to forward these documents to plaintiff or even make plaintiff aware of defendants' receipt of these documents.

60.     Since October 2001, defendant John W. Akins' business has not fared well. Defendant John W. Akins has been terminated by clients, is known in the real estate closing community for performing substandard work, has a high staff and attorney turn-over, and, upon information and belief, has lost significant amounts of revenue. However, defendant John W. Akins, to buttress and shore up his fledgling copycat business, continues to misappropriate and infringe upon plaintiff's good will, plaintiff's service marks and the Akins Marks. By confusing the public in this manner, defendant John W. Akins has damaged and continues to damage the good will, reputation and value of plaintiff, its service name and the Akins marks.

61.     Unless enjoined by this court, it is likely that defendant John W. Akins and defendant Law Offices of John W. Akins, PLLC will continue to confuse the public by misappropriating, utilizing, and infringing upon plaintiff's trade name, service marks and the Akins Marks causing plaintiff to continue to suffer irreparable injury, damage and harm.

V.     CLAIMS FOR RELIEF

62.     Plaintiff sets forth and alleges the following claims for relief: