## PLAINTIFF'S FIRST CLAIM FOR RELIEF
## LANHAM ACT – UNFAIR COMPETITION, TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, AND FALSE REPRESENTATIONS CONCERNING THE ORIGIN OF SERVICES
(15 U.S.C.A. § 1125)

63.     Plaintiff restates and incorporates by reference all previous paragraphs contained within this complaint.

64.     Defendants' acts, practices and conduct as described herein constitute unfair competition and false or misleading descriptions or representations of fact in that defendants' communications are likely to cause confusion or to cause mistake, to deceive others, and to misrepresent the nature, characteristics, and qualities of the parties' services and commercial activities, all in violation of Lanham Trade-Mark Act, § 43(a), 15 U.S.C.A. 1125(a).

65.     Defendants have misappropriated and infringed upon plaintiff's trade name and the Akins Marks. While any single act of copying, incident of infringement or utterance of a false statement may not, in isolation and only considered by itself, constitute a violation of the Lanham Act, the totality of defendants' actions, the infringing marks defendants have employed, and the statements defendants have made to the public have the tendency to confuse and have actually confused the consuming public as to the source, origin and sponsorship of the services offered by defendants. By way of representation, when defendants' (a) false statements of association and origin, (b) copying of plaintiff's trade name, (c)copycat letterhead, (d) appropriation of plaintiff's staff personnel, (e) knock-off exterior sign and (f) place of business are considered as a whole, it is readily apparent that defendants' methods of operation and

competition are likely to confuse and have confused the consuming public. Defendants' false and misleading statements and acts of infringement have actually deceived consumers and have the tendency to deceive a substantial segment of the intended audience.

66.     Defendants' deception is material in that defendants' deceptive actions are likely to influence consumers' purchasing decisions. This is especially true because (a) plaintiff's service marks and trade name are strong and distinctive and gained their notoriety and value prior to defendants' acts of infringement, (b) the knock-off marks utilized by defendants are almost exact copies and replicas of plaintiff's marks, (c) the services offered and sold by plaintiff and defendants are nearly identical in many other respects, (d) the facilities of the parties are highly similar (indeed, defendants conduct business from the same location formerly occupied by plaintiff), (e) the parties use similar methods of advertising and promotion, (f) defendants' had and have the specific intention of deceiving the public, and (g) the consuming public (which includes everything from sophisticated commercial entities to everyday lay persons) have suffered actual confusion.  Plaintiff has been damaged and is likely to continue to suffer injury as a result of defendants' false statements and acts of infringement by direct diversion of sales, customers and clients from plaintiff to defendants and by lessening the goodwill associated with plaintiff's services and commercial activities.

67.     Defendants' false and misleading statements are not only literally false, but they also are false by necessary implication.  Further, while parts of

defendants' false statements may be literally true, other parts of their statements (and defendants' statements taken as a whole) are likely to mislead or confuse consumers and have in fact misled and confused consumers.

68.     Parts of defendants' false statements constitute innuendo, indirect intimations, and ambiguous suggestions directed toward causing the consuming public to misapprehend the true facts underlying defendants' and plaintiff's services, and, as such, defendants' false statements have misled, confused or deceived and have the tendency to mislead, confuse and deceive members of the consuming public.

69.     Although defendants and plaintiff maintain their respective places of business within the State of North Carolina, plaintiff has introduced and continues to introduce its trade dress and the Akins Marks into interstate commerce. Moreover, defendants' acts of unfair competition, trademark infringement and false advertising have entered and continue enter the stream of interstate commerce. By way of example, but not limitation, plaintiff respectfully shows the following:

A.     Plaintiff uses its service marks, trade name and the Akins Marks to promote its business in other states where plaintiff's attorneys work, and, as a result, plaintiff has become known in other states and receives work and client referrals from out of state as a result of this utilization.

B.     Plaintiff frequently mails, faxes, and e-mails documents containing its service marks, trade name and the Akins Marks to commercial entities, attorneys and others outside the State of North Carolina for the purpose of

performing work for plaintiff's customers and promoting plaintiff's business and receives revenue from out of state entities.

C.     Plaintiff's service marks, trade name and the Akins Marks have appeared and continue to appear on a regular and frequent basis in newspapers that have out-of-state circulation.

D.     Plaintiff maintains a website that incorporates its service marks, trade name and the Akins Marks, and this website is accessible throughout the country.

E.     Attorneys employed by plaintiff and plaintiff itself are authorized attorneys for several out-of-state commercial entities such as lenders and title insurance companies, and defendants' misappropriated marks, infringing materials and false statements have been issued to these entities.

F.     Defendants frequently mail, fax and e-mail documents that infringe upon, mimic and copy plaintiff's service marks, trade name and the Akins Marks to commercial entities (including those title insurance companies and lending institutions that conduct business with plaintiff) and others outside the State of North Carolina to confuse them and misappropriate plaintiff's business. Further, defendants formerly maintained an infringing website and currently utilize an infringing e-mail address.

G.     The appearance of defendants' knock-off law practice, defendants' infringing materials and defendants' false statements have the tendency to confuse and, upon information and belief, have actually confused others traveling

from outside the State of North Carolina who are looking to establish commercial relationships with an attorney.

H. Defendants' knock-off law practice, defendants' infringing materials and defendants' false statements have confused others outside the State of North Carolina and caused them to conduct business with defendants when these same persons, in reality, preferred to conduct business with plaintiff instead.

I. Defendant has advertised in at least one newspaper that has out-of-state circulation.

70. Defendants' acts, practices and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy or colorable imitation of plaintiff's service marks, trade name and the Akins Marks. Further, defendants' sale offering for sale, distribution and advertising of services under plaintiff's service marks, trade name and the Akins Marks and substantially similar designs thereof, is likely to cause confusion or mistake or to deceive the public as to the source, origin and association of defendants' services.

71. As the intended, direct and proximate result of defendants' unfair competition, service mark infringement, trademark infringement and false advertising, plaintiff has been and is likely to be substantially injured in its business, including damage to its identity, good will and reputation, resulting in lost revenues, lost profits and diminished goodwill. Plaintiff has lost the business of persons, parties and entities that are located outside the State of North Carolina. Further, plaintiff has lost its right to control its service marks,

trademarks and business identity. For these reasons, plaintiff is entitled to judgment against defendants, jointly and severally, for plaintiff's compensatory and special damages.

72. As the direct and proximate result of defendants' unfair competition, service mark infringement, trademark infringement and false advertising, defendants have been unjustly enriched by diverting plaintiff's sales and business to themselves, and, in doing so, defendants have increased their own revenues and profits and enhanced their own goodwill. Because they are the product of an unlawful enterprise, defendants' profits are unjust, and they should be disgorged by the court.

73. Because plaintiff's service marks and trademarks are unique and represent to the public plaintiff's identity, reputation, and goodwill, damages alone cannot fully compensate plaintiff or make plaintiff whole as a result of defendants' misconduct. Accordingly, plaintiff has no adequate remedy at law.

74. Unless enjoined by this court, defendants and those acting in concert with them, will continue to communicate false statements concerning defendant's services and plaintiff's services and continue to engage in further acts of infringement, thus causing plaintiff to suffer irreparable injury. This threat and defendants' proven record of causing future injury to plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition, trade dress infringement and false advertising and to ameliorate and mitigate plaintiff's injury.

30

## PLAINTIFF'S SECOND CLAIM FOR RELIEF
## UNFAIR AND DECEPTIVE TRADE PRACTICES
## EMPLOYING METHODS OF UNFAIR COMPETITION, INFRINGEMENT, AND
## VIOLATIONS OF COMMON LAW
(N.C. GEN. STAT. § 75-1.1)

75.     Plaintiff restates and incorporates by reference all previous paragraphs contained within this complaint.

76.     Defendants' acts, practices and conduct as described herein constitute unfair competition, trade disparagement, trademark and service mark infringement, trade name infringement, intentional interference with prospective economic advantages and other illegal and unethical conduct, all in violation of common law and The North Carolina Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1.

77.     Among other things, defendants have misappropriated and infringed upon plaintiff's service marks, trade name and the Akins Marks, disparaged plaintiff in the market, interfered with plaintiff's economic advantages with its staff and clientele, infringed upon plaintiff's trade name, and violated established ethical Rules of Professional Conduct governing the practice of law to include Rules 7.1, 7.5 and 8.4. To promote their business and thereby damage plaintiff's competing business, defendants have employed infringing marks, and defendants have made statements to members of the public that have the tendency to confuse and have actually confused the consuming public as to the source, origin, sponsorship and association of the services offered by defendants. Defendants' acts of unfair competition, utterances of false and misleading statements and acts of infringement have actually deceived

consumers and have the tendency to deceive a substantial segment of the intended audience.

78.     Defendants' deception is material in that defendants' deceptive actions are likely to influence consumers' purchasing decisions. As the result of defendants' misconduct, plaintiff has been damaged and is likely to continue to suffer injury as a result of defendants' false statements and acts of infringement by direct diversion of sales, customers and clients from plaintiff to defendants and by lessening the goodwill associated with plaintiff's services and commercial activities.

79.     At all times referenced within this complaint, defendants were engaged in commerce in the State of North Carolina; defendants' actions as set forth within this complaint are in and affect commerce as that term has been defined by the North Carolina General Assembly and interpreted by North Carolina courts; and defendants' misconduct and plaintiff's resulting damage and injury are plainly within the purview of N.C. GEN. STAT. § 75-1.1, et seq., the North Carolina Unfair and Deceptive Trade Practices Act.

80.     Defendants' misconduct as set forth within this complaint is unfair in that it offends established public policy and is otherwise immoral, unethical, oppressive, unscrupulous and substantially injurious to the consuming public. Defendants have willfully violated the laws of the State of North Carolina by employing tactics and practices that tend to injure the consuming public and others who are in lawful and fair competition with defendants. Defendants' unfair and deceptive trade practices are contrary to long established public policy and

are abhorrent and injurious to the principles and policies attendant to and promoted by the free market economy.

81.    The above described unlawful, unfair and unethical acts and practices of defendants constitute unfair and deceptive acts or practices that are in or affect commerce of this State in violation of N.C. GEN. STAT. § 75-1.1. As the intended, direct and proximate result of defendants' unfair competition, trade dress infringement, unlawful interference and false statements, plaintiff has been and is likely to be substantially injured in its business, including damage to its good will and reputation, resulting in lost revenues, lost profits and diminished goodwill.

82.    As the intended, direct and proximate result of defendants' unfair competition, service mark and trademark infringement and false advertising, plaintiff has been and is likely to be substantially injured in its business, including damage to its identity, good will and reputation, resulting in lost revenues, lost profits and diminished goodwill. Further, plaintiff has lost its right to control its service marks, trademarks and business identity. For these reasons, plaintiff is entitled to judgment against defendants, jointly and severally, for plaintiff's compensatory and special damages.

83.    As the direct and proximate result of defendants' unfair competition, infringement and false advertising, defendants have been unjustly enriched by diverting plaintiff's sales and business to themselves, and, in doing so, defendants have increased their own revenues and profits and enhanced their

own goodwill. Because they are the product of an unlawful enterprise, defendants' profits are unjust, and they should be disgorged by the court.

84. Because plaintiff's service marks, trademarks and the Akins Marks are unique and represent to the public plaintiff's business identity, reputation, and goodwill, damages alone cannot fully compensate plaintiff or make plaintiff whole as a result of defendants' misconduct. Accordingly, plaintiff has no adequate remedy at law.

85. Unless enjoined by this court, defendants and those acting in concert with them, will continue to communicate false statements concerning defendant's services and plaintiff's services and continue to engage in further acts of infringement, thus causing plaintiff to suffer irreparable injury. This threat and defendants' proven record of causing future injury to plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition, trade dress infringement and false advertising and to ameliorate and mitigate plaintiff's injury.

PLAINTIFF'S THIRD CLAIM FOR RELIEF
COMMON LAW UNFAIR COMPETITION
TRADEMARK AND SERVICE MARK INFRINGEMENT

86. Plaintiff restates and incorporates by reference all previous paragraphs contained within this complaint.

87. Plaintiff has acquired, developed, maintained and utilized inherently unique, distinctive and non-functional trademarks and service marks. Plaintiff's trademarks and service marks have acquired secondary meaning within the

market in that consumers regularly associate plaintiff's trademarks and service marks with the services of plaintiff and the attorneys employed by plaintiff.

88. Defendants were aware of plaintiff's trademarks and service marks and the commercial value associated therewith. With full comprehension of these facts, defendants intentionally engaged in a course of conduct designed to confuse consumers by copying, simulating and misappropriating plaintiff's trademarks and service marks to defendants' commercial benefit. As the direct and intended result of defendants' misconduct, members of the consuming public have been confused as to the source, history, sponsorship, association and origin of defendants' services.

89. Defendants' intentional misconduct, taken on the whole, is of such a nature as to have unjustly, unfairly and fraudulently invade plaintiff's protected rights in its trademarks and service marks. Further, defendants' wrongful and deceitful scheme has injured plaintiff by taking its business, impairing its reputation, and damaging its good will. Through their actions as herein described, defendants have unfairly profited by the use of plaintiff's previously established business image and reputation.

90. Defendants actions as herein described constitute acts of misappropriation, infringement and unlawful simulation of plaintiff's trademarks and service marks. Defendants had actual access and knowledge of plaintiff's trademarks and service marks and thereafter copied (almost identically) plaintiff's image in such a way as to mislead plaintiff's prospective and existing clients and customers and the consuming public in general.

91.     Plaintiff's trademarks and service marks have established and acquired inherent distinctiveness and secondary meaning, and plaintiff acquired its lawful right to its trademarks and service marks well before defendants infringed upon them.

92.     Defendants' acts of infringement were implemented to cause confusion in the minds of the consuming public, and members of the consuming public are not only likely to be confused but several consumers have suffered actual confusion as to the source, origin, history, association and sponsorship of defendants' services.

93.     As the intended, direct and proximate result of defendants' trade dress infringement, plaintiff has been and is likely to be substantially injured in its business, including damage to its good will and reputation, resulting in lost revenues, lost profits, diminished goodwill and diversion of sales to defendants. For these reasons, plaintiff is entitled to judgment against defendants, jointly and severally, for plaintiff's compensatory and special damages.

94.     Because plaintiff's trademarks and service marks are unique and represent to the public plaintiff's business identity, reputation, and goodwill, damages alone cannot fully compensate plaintiff or make plaintiff whole as a result of defendants' misconduct. Accordingly, plaintiff has no adequate remedy at law.

95.     Unless enjoined by this court, defendants and those acting in concert with them, will continue to infringe upon plaintiff's trademarks and service marks, thus causing plaintiff to suffer irreparable injury. This threat and

defendants' proven record of causing future injury to plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition through trademark and service mark infringement and to ameliorate and mitigate plaintiff's injury.

96.     Defendants' misconduct as described herein was willful, oppressive, malicious and without legal justification, and plaintiff is entitled to punitive damages in an amount to be proven and established at trial.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION AND
## TRADE NAME INFRINGEMENT

97.     Plaintiff restates and incorporates by reference all previous paragraphs contained within this complaint.

98.     Plaintiff has acquired, developed, maintained and utilized an inherently unique and distinctive trade name. Plaintiff's trade name has acquired secondary meaning within the market in that consumers regularly associate plaintiff's trade name with the services of plaintiff, the attorneys employed by plaintiff and the services previously provided by former members of plaintiff's law firm.

99.     Defendants were aware of plaintiff's trade name and the commercial value associated therewith. With full comprehension of these facts, defendants intentionally engaged in a course of conduct designed to confuse consumers by copying, simulating and misappropriating plaintiff's trade name to defendants' commercial benefit. As the direct and intended result of defendants'

misconduct, members of the consuming public have been confused as to the source, history, sponsorship, association and origin of defendants' services.

100.    Defendants' intentional misconduct, taken on the whole, is of such a nature as to have unjustly, unfairly and fraudulently invade plaintiff's protected rights in its trade name. This is particularly so considering (a) the some thirty years the trade name was used prior to defendants' infringement, (b) the geographic location where plaintiff and defendants market their services, (c) the distinctiveness of the trade name, (d) the secondary meaning that the trade name has established, (e) the similarity between the services offered to the public by plaintiff and defendants, and (f) the substantial good will and good reputation that surrounds plaintiff's trade name. Defendants' wrongful and deceitful scheme has injured plaintiff by taking its business, impairing its reputation, and damaging its good will. Through their actions as herein described, defendants have unfairly profited by the use of plaintiff's previously established trade name and the reputation associated with that trade name.

101.    Defendants' actions as herein described constitute acts of misappropriation and unlawful simulation of plaintiff's trade name. Defendants had actual access and knowledge of plaintiff's trade name and thereafter copied (almost identically) plaintiff's trade name in such a way as to mislead plaintiff's prospective and existing clients and customers and consumers in general. Indeed, given the totality of defendants' misconduct, it cannot be said that defendants are merely promoting their surname; rather, defendants are seeking

to gain economic benefit by associating themselves with plaintiff and its predecessors in interest.

102.    Plaintiff's trade name established and acquired secondary meaning and inherent distinctiveness, and plaintiff acquired lawful rights to its trade name well before defendants infringed upon it..

103.    Defendants' acts of infringement were implemented to cause confusion in the minds of the consuming public, and members of the consuming public are not only likely to be confused but several consumers have suffered actual confusion as to the source, origin, history, association and sponsorship of defendants' services.

104.    As the intended, direct and proximate result of defendants' trade name infringement, plaintiff has been and is likely to be substantially injured in its business, including damage to its good will and reputation, resulting in lost revenues, lost profits, diminished goodwill and diversion of sales to defendants. For these reasons, plaintiff is entitled to judgment against defendants, jointly and severally, for plaintiff's compensatory and special damages.

105.    Because plaintiff's trade name is unique and represents to the public plaintiff's identity, reputation, and goodwill, damages alone cannot fully compensate plaintiff or make plaintiff whole as a result of defendants' misconduct. Accordingly, plaintiff has no adequate remedy at law.

106.    Unless enjoined by this court, defendants and those acting in concert with them, will continue to infringe upon plaintiff's trade name, thus causing plaintiff to suffer irreparable injury. This threat and defendants' proven

record of causing future injury to plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition through acts of trade name infringement and to ameliorate and mitigate plaintiff's injury.

107.    Defendants' misconduct as described herein was willful, oppressive, malicious and without legal justification, and plaintiff is entitled to punitive damages in an amount to be proven and established at trial.

### PLAINTIFF'S FOURTH CLAIM FOR RELIEF
### COMMON LAW TRADE DISPARAGEMENT

108.    Plaintiff restates and incorporates by reference all previous paragraphs contained within this complaint.

109.    Defendants have intentionally disparaged plaintiff by make false statements of fact with regard to plaintiff's association and relationship with Waverly F. Akins and by making false statements of fact with regard to defendants' prior professional relationship with Waverly F. Akins and with plaintiff. Defendants' actions as described herein constitute acts of trade disparagement.

110.    At the time defendants made, uttered and published the above described false statements, defendants knew they were false, and defendants acted in utter disregard for the truth or falsity of these representations.

111.    Defendants have published the above described false statements to members of the public with the intent, design and purpose of disparaging and damaging plaintiff in its profession. Further, defendants engaged in the above

described acts of trade disparagement with actual malice with the specific goal of diverting customers and clients from plaintiff to defendants.

112. Defendants' acts of trade disparagement have played a material role in inducing others not to deal or contract with plaintiff and to instead engage in commerce with defendants.

113. Defendants have made false publications concerning plaintiff's services that have, upon information and belief, induced others not to deal with plaintiff, and defendants' false publications have caused damage to plaintiff's business, reputation and goodwill. As a result, plaintiff has suffered and continues to suffer injury as a result of defendants' false statements by direct diversion of sales from plaintiff to defendants, loss of sales and profits, and by lessening the goodwill associated with plaintiff.

114. As the intended, direct and proximate result of defendants' trade disparagement, plaintiff has been and is likely to be substantially injured in its business, including damage to its good will and reputation, resulting in lost revenues, lost profits, diminished goodwill and diversion of sales to defendants. For these reasons, plaintiff is entitled to judgment against defendants, jointly and severally, for plaintiff's compensatory and special damages.

115. Unless enjoined by this court, defendants and those acting in concert with them, will continue to engage in future acts of trade disparagement, thus causing plaintiff to suffer irreparable injury. This threat and defendants' proven record of causing future injury to plaintiff' and its business, goodwill, and

reputation requires injunctive relief to prevent defendants' continued trade disparagement and to ameliorate and mitigate plaintiff's injury.

116.    Defendants' misconduct as described herein was willful, oppressive, malicious and without legal justification, and plaintiff is entitled to punitive damages in an amount to be proven and established at trial.

## PLAINTIFF'S FIFTH CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

117.    Plaintiff restates and incorporates by reference all previous paragraphs contained within this complaint.

118.    Through the years, plaintiff developed a substantial base of loyal customers, clients and employees that provided plaintiff with valuable commercial advantages. Because they were well satisfied with the nature of the services provided by plaintiff, many of these customers and referral agencies utilized plaintiff anytime they required legal services. Moreover, plaintiff's employees were well satisfied with their positions within plaintiff's organization.

119.    Defendants knew of plaintiff's superior economic advantages in the legal community as well as plaintiff's relationships with the aforementioned third parties. Armed with this knowledge, defendants engaged in a course of conduct, open and clandestine, designed to consciously and substantially interfere with plaintiff's economic advantages. Inter alia., defendants induced third parties not to continue their long-term association with plaintiff and further induced these parties not to enter further contracts with plaintiff. Moreover, defendants recruited and re-routed these relationships to themselves for their collective economic benefit and with the specific intent of committing trademark and service

mark infringement, trade name infringement, consumer confusion and violations of the Lanham Act.

120. But for the unlawful interference of defendants, the aforementioned third parties would have continued to utilize plaintiff as their provider and /or sole source of legal services and to provide them with long term employment. Indeed, but for the misconduct of defendants, these third parties would have continued to enter valuable contracts with plaintiff, and a business relationship would have continued to ensue between plaintiff and these third parties.

121. Defendants' actions as set forth herein were without justification or lawful excuse. Further, defendants' actions as described herein were not privileged, and, even if they were, defendants purposefully acted outside the scope of any such privilege. In particular, defendants engaged in the foregoing conduct not in the spirit of lawful competition but for the primary objective of confusing the public by developing defendants' knock-off law firm.

122. Defendants' actions as described herein were intentional, wanton, willful and malicious.

123. Defendants' actions as set forth herein directly and proximately caused plaintiff to suffer damages in an amount to be proven at trial. Plaintiff's injuries include, but are not limited to, lost sales and profits, lost clients, interruption of its business, and loss of good will. For these reasons, plaintiff is entitled to judgment against defendants, jointly and severally, for plaintiff's compensatory and special damages.

124.  Defendants' misconduct as described herein was willful, oppressive, malicious and without legal justification, and plaintiff is entitled to punitive damages in an amount to be proven and established at trial.

## VI.  PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays for judgment and relief as follows:

1.  That defendants, their officers, agents, and servants (and all persons acting in concert with them) be temporarily, preliminarily, and permanently restrained and enjoined from engaging in further acts of unfair competition, trademark and service mark infringement, trade name infringement, false advertising and trade disparagement.

2.  That judgment be entered against defendants, jointly and severally, for actual, compensatory, special, incidental, and consequential damages associated with defendants' illegal conduct.

3.  That defendants be required to account for and pay over to plaintiff all of the gains, profits and advantages derived by them as a result of their wrongful activities and to pay such damages and amounts to plaintiff as this court should determine to be just and appropriate.

4.  That defendants pay to plaintiff punitive damages for their intentional, oppressive and malicious acts.

5.  That judgment be entered for three times the amount of plaintiff's damages pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, N.C. GEN. STAT. § 75-16, and all other applicable state and federal laws.

6.     That the court award to plaintiff all of the costs and expenses, including, but not limited to, reasonable attorneys' fees, in connection with this action as provided for by statute.

7.     That plaintiff receive pre-judgment and post-judgment interest to the fullest extent permitted under law.

8.     That this verified complaint be considered and taken as a sworn affidavit in support of the injunctive relief sought by plaintiff.

9.     That plaintiff have a trial by jury.

10.    That plaintiff have such other and further relief as the court deems just and proper.

DATED: September 30, 2005

                              SMITH DEBNAM NARRON WYCHE
                              SAINTSING & MYERS, L.L.P.


                              By _____
                                 JOHN W. NARRON
                                 Attorneys for Plaintiff
                                 Post Office Box 26268
                                 Raleigh, NC 27611-6268
                                 (919) 250-2000 (Telephone)
                                 (919) 250-2100 (Facsimile)