UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:05-CV-684-BR(3)

| | |
|---|---|
| AKINS LAW FIRM, P.C. d/b/a AKINS, HUNT & FEARON, P.C., d/b/a THE LAW OFFICES OF AKINS, HUNT & FEARON, P.C., and successor in interest to THE LAW OFFICES OF AKINS, HUNT & FEARON, P.L.L.C. and THE LAW OFFICES OF WAVERLY F. AKINS,<br><br>PLAINTIFF,<br><br>VS.<br><br>LAW OFFICES OF JOHN W. AKINS, PLLC, and JOHN W. AKINS, Individually,<br><br>DEFENDANTS. | <u>FIRST AFFIDAVIT OF DONALD G. HUNT, JR.</u> |



NOW COMES THE AFFIANT, Donald G. Hunt, Jr., who alleges and says the following under oath and verification:

1. My name is Donald G. Hunt, Jr.; I am over the age of eighteen (18) years; and I am neither a minor nor incompetent to give testimony in a court of law.

2. This affidavit is made upon my own personal knowledge, and, if called to testify, I could competently testify to the matters contained herein. This affidavit is made to supplement those matters set forth within the verified complaint.

3. I am an attorney, North Carolina Bar Number 22128, duly licensed to practice in the General and Appellate Courts of Justice of the State of North Carolina, the United States District Court for the Eastern District of North

1

Carolina and United States Court of Appeals for the Fourth Circuit. Over the years, I have obtained pro hac vice status and made appearances in numerous other jurisdictions including California, South Carolina and Idaho.

4. I am the president and managing officer of Akins Law Firm, P.C. d/b/a Akins, Hunt & Fearon, P.C. Our law firm provides general legal services that include civil and criminal litigation, appellate practice, commercial transactions, real estate closing transactions and the like. My practice has included acting as primary trial counsel in multiple cases, jury and non-jury, in state and federal courts in the State of North Carolina as well as in other jurisdictions. I have acted as primary counsel in at least five cases in which the North Carolina Court of Appeals has filed published opinions. I am a member in good standing in the Million Dollar Advocates Forum (a national association whose membership is limited to attorneys who have obtained verdicts or awards exceeding One Million Dollars), and I have recently been a featured attorney in the annual "Large Verdicts" edition of *North Carolina Lawyer's Weekly*. Finally, I was recently the keynote speaker and a substantive instructor for the Annual Convention of the Southeast Section of the Institute of Business Appraisers speaking on topics of commercial misconduct, measuring commercial damages, and the admission of expert testimony on economic loss in commercial cases.

5. I first met Waverly F. Akins in 1994 while I was a third year law student at Campbell University in Buies Creek, North Carolina. My first encounter with Mr. Akins was in the form of a job interview, and, at the conclusion of the interview process, Mr. Akins offered to me (and I accepted) a position as an

associate attorney within his firm, which he operated under the name The Law Offices of Waverly F. Akins.

6. In or around July 1995, Jason M. Fearon also interviewed for a position within The Law Offices of Waverly F. Akins, and Mr. Akins hired Mr. Fearon as an associate attorney within the firm.

7. At the time Mr. Fearon and myself began practicing with Waverly F. Akins, all of us utilized letterhead, envelopes and the like that Mr. Akins had previously developed and used in the operation of his business. I have personally reviewed files compiled by Mr. Akins, and I have seen similar stationery in case files dating back several decades. True and accurate copies of the letterhead, envelopes and fax covers utilized by The Law Offices of Waverly F. Akins are attached hereto collectively as Exhibit 1.

8. In or around November 1995, Waverly F. Akins met with Mr. Fearon and me on several occasions to discuss the formation of a joint law practice. At the conclusion of our negotiations, it was decided among the three of us that we would form a professional limited liability company under the name The Law Offices of Akins, Hunt & Fearon, P.L.L.C. It was further agreed that, in exchange for our agreement to conduct business with Mr. Akins, the assets and files associated with his prior practice would become the property of the professional limited liability company. This included the right to utilize Mr. Akins' name and to advertise and market the professional limited liability company's association with him.

9. After the professional limited liability company was formed, we undertook measures in 1996 to market and advertise our new law practice. Among other things, we conducted interviews with the local press that resulted in a news article appearing in *The Fuquay-Varina Independent*, a newspaper with intrastate and interstate distribution. In this article, the new law firm was announced to the public, and the article displayed a picture of Mr. Akins, Mr. Fearon, and me from Mr. Akins' office while Mr. Akins was seated at his desk. We also spent considerable money for newspaper advertisements and telephone directories that ran consistently thereafter.

10. Shortly after the professional limited liability company was formed, the three of us developed stationery that was nearly identical to that formerly utilized by The Law Offices of Waverly F. Akins. This stationery was regularly used during 1996 and part of 1997. A true and accurate copy of this letterhead is attached hereto as Exhibit 2.

11. Prior to the formation of the professional limited liability company, the place of business for The Law Offices of Waverly F. Akins was marked with a green and white exterior sign bearing the following name: "The Law Offices of Waverly F. Akins." After the professional limited liability company was formed, we replaced this sign with a nearly identical green and white exterior sign bearing the following name: "The Law Offices of Akins, Hunt & Fearon, A Professional Limited Liability Company." This sign was displayed outside our place of business until on or around early October 2001.

12. In or around 1996, the professional limited liability company hired a graphic artist to update our stationery. True and accurate copies of the letterhead, envelopes and business cards developed by the graphic artist are attached hereto as Exhibit 3.

13. From 1996 until 1997, the professional limited liability company utilized two (2) different letterheads. I principally utilized the letterhead depicted in Exhibit 3; however, Waverly F. Akins, more times than not, and others in the office, on a less frequent basis, utilized the letterhead depicted in Exhibit 2.

14. Following the death of Waverly F. Akins in November 1997, our law firm elected to memorialize Waverly F. Akins by continuing to associate his name with the law firm. The operating agreement signed by Mr. Akins, Mr. Fearon and by me expressly granted us that right, and we believed that it was appropriate to maintain this association out of respect to Mr. Akins. Shortly thereafter, we created and utilized a letterhead containing the following memorial to Mr. Akins: "Waverly F. Akins, 1932 – 1997." True and accurate copies of the above described letterhead and envelopes are attached hereto as Exhibit 4. Though we changed the format of our letterhead, we continued to utilize the envelopes depicted in Exhibit 3. We consistently utilized Exhibits 3 and 4 until October 2001.

15. In or around 2000, the certified public accountants that our law firm utilized recommended to us that we start conducting business as a professional corporation rather than as a professional limited liability company. Because we believed that this advice was sound, Mr. Fearon and I formed Akins Law Firm,

P.C., and since January 2001 and continuing through the present we have at all times conducted business under the trade names "The Law Offices of Akins, Hunt & Fearon, P.C." or "Akins, Hunt & Fearon, P.C." When the professional corporation was formed, Mr. Fearon and I transferred all of the assets of the professional limited liability company to the new professional corporation, including its rights to use the name "Akins" and market the firm's association with Waverly F. Akins.

16. From 1996 and continuing through today, our law firm has spent substantial monetary resources and time marketing our law practice. Among other things, we have spent thousands of dollars on stationery, letterhead, marketing flyers and the like. Moreover, we have consistently and regularly advertised our law firm in the Yellow Pages. We have paid for newspaper advertisements, sponsored sports teams and supported charitable organizations such as the Special Olympics, the Fuquay-Varina Police Department Torch Run, the Fuquay-Varina Jaycees, the Boy Scouts, The Chamber of Commerce and the like. Our attorneys have also taken active and prominent leadership roles in multiple civic organizations to include The Fuquay-Varina Board of Commissioners, The Fuquay-Varina Board of Adjustment, The Fuquay-Varina Chamber of Commerce, The Fuquay-Varina Rotary, and The Fuquay-Varina Jaycees. In any given year, our marketing expenditures range from approximately five percent (5%) to ten (10%) of the law firm's annual gross revenue, and our attorneys have collectively spent dozens of hours years participating in charitable and civic events in our community.

17. Our promotional efforts have been met with financial success. By way of example, when the law firm was first founded in 1996, we only had a handful of clients, and our gross revenues amounted to little more than one hundred thousand dollars per year. In 1997, our client base grew only modestly, and gross revenues were only slightly higher than in the prior year. However, since that time, our business has grown steadily to where our client database numbers in the thousands, and our gross revenues have doubled in most years since 1999.

18. Our law firm and its attorneys have been mentioned in several unsolicited news articles. Among other things, our law firm has been mentioned or referenced in *The News & Observer*, *North Carolina Lawyer's Weekly*, *The Fuquay-Varina Independent*, *The Angier News*, and *The Dunn Daily Record*, all newspapers of general distribution with subscribers being located outside the State of North Carolina. Most of these articles pertain to the work our lawyers have performed on various cases as well as our charitable and civic activities within the community.

19. In the spring or summer of 2001, we were continuing to rent office space from the Estate of Waverly F. Akins, and it was determined that the office space no longer suited our needs. At that time, our law firm elected to move its offices from 205 S. Fuquay, Avenue to a new place of business approximately two blocks away at 134 N. Main Street.

20. Shortly after we communicated our intention to relocate our offices to members of the Akins' family, we were informed that John W. Akins would be

leaving his current job at the Wake County Assistant District Attorney's Office to open his own law practice from our former place of business.

21. On at lest two occasions in 2001, John W. Akins contacted me to discuss his new business. In particular, John W. Akins asked me to drop the "Akins" name from our law firm. John W. Akins stated that he believed our use of the name "Akins" may cause confusion among members of the public; in particular, John W. Akins believed that consumers may associate his prospective law firm with ours. In response, I explained to John W. Akins that, through its years of constant utilization and the promotional efforts we undertook following the death of Waverly F. Akins, our law firm was readily associated with the name "Akins." Further, I advised John W. Akins that removing the "Akins" name was likely to generate the very confusion described by him. For these reasons, I informed John W. Akins that we fully intended to continue conducting our business under the "Akins" name. I also told John W. Akins that, while I was sensitive to his and his mother's feelings concerning his father's name, his father's law practice belonged to Mr. Fearon and to me and that we would not simply abandon the good will that we had generated and maintained over the four years since his father's death.

22. In late September 2001, we relocated our offices to 134 N. Main Street and began operating from this new office on or around October 1, 2001. Shortly thereafter, John W. Akins opened his business from our former place of business located at 205 S. Fuquay Ave. using the trade name "The Law Offices of John W. Akins," a name substantially similar to our trade name. When we

moved, I instructed my staff and the movers that we had hired to remove from 205 S. Fuquay Ave. all files, documents, stationery and the like associated with our law firm and its predecessors. I personally inspected our file room and observed that these individuals had complied with my instructions. My decision in this regard was centered on the fact that I did not want John W. Akins to have any reason to think we were some how abandoning or forfeiting to him the law practice that we had developed with his father or otherwise lead him to believe that he could associate his practice with ours.

23. Within a day or two after we moved our offices, our exterior sign at 205 S. Fuquay Ave. was removed by someone, presumably at the direction of John W. Akins. I have not seen our old sign since that date.

24. Shortly after our old sign was removed, I saw that a new green and white sign had been installed in the exact location formerly occupied by our sign. This sign is still located at 205 S. Fuquay Ave., and it bears the caption: "The Law Offices of John W. Akins." This is nearly the exact trade name that was noted on our prior sign and on the sign that was previously used by the late Waverly F. Akins. Moreover, this sign depicted (and still depicts) a logo that is highly similar to the one that our law firm has utilized since 1996.

25. When we moved to our new offices in 2001, we hired a graphic artist to modify our stationery. When we opened our satellite office in the Town of Holly Springs, North Carolina, we updated this stationery in 2005 to reflect this address. True and accurate copies of our letterhead, envelopes and business

cards are attached hereto collectively as Exhibit 5. We have consistently utilized this stationery since 2001.

26. I have, on more than one occasion, personally received a letter from John W. Akins on his firm's letterhead. This letterhead is nearly identical, in both wording and format, to the letterhead consistently utilized by the late Waverly F. Akins and by our law firm. Given this substantial similarity, it is apparent, at least to me, that John W. Akins copied our letterhead. A true and accurate copy of the letterhead and envelope that I received from John W. Akins is attached hereto as Exhibit 6.

27. Shortly after John W. Akins opened his competing law firm, I personally saw a news article in *The Fuquay-Varina Independent* announcing his new business. That article displayed a picture of John W. Akins seated at the desk formerly utilized by Waverly F. Akins. The article and accompanying picture were highly similar to the article and picture that appeared in 1996 announcing the formation of The Law Offices of Akins, Hunt & Fearon, P.L.L.C.

28. I have personally seen paid advertisements of John W. Akins in *The Fuquay-Varina Independent* stating that The Law Offices of John W. Akins offers the identical legal services that have been provided by our law firm since it was founded in the 1960's by Waverly F. Akins and the same services that our law firm provides even through today. Our law firm also advertises in this same newspaper. A true and accurate copy of our latest advertisement is attached hereto as Exhibit 7.

29. I have personally seen paid advertisements of John W. Akins in the Spring Yellow Pages stating that The Law Offices of John W. Akins offers the identical legal services that have been provided by our law firm since it was founded in the 1960's by Waverly F. Akins and the same services that our law firm provides even through today. Our law firm also advertises in this same publication, and a true and accurate copy of our current advertisement is attached hereto as Exhibit 8.

30. Given the general nature of our law practice, we deal with a variety of clients on a day to day basis. Our law firm represents a wide range of clients from sophisticated financial institutions and multi-million dollar corporations to unsophisticated individuals with little more than a high school education.

31. Since John W. Akins opened his law practice in 2001, I have personally seen letters and other correspondence addressed to John W. Akins delivered to our law firm. Upon receipt, I and my staff immediately notify John W. Akins of our receipt and make prompt arrangements to forward these materials to John W. Akins. However, it is my understanding that John W. Akins does not return this professional courtesy when he receives letters and materials that are clearly addressed to us.

32. Since John W. Akins opened his law practice in 2001, I have personally fielded a number of telephone calls from persons wanting to speak with John W. Akins. I and my staff promptly refer these persons to John W. Akins. However, it is my understanding that John W. Akins does not return this

professional courtesy when he receives telephone calls that are clearly meant for us.

33. Though at least two other attorneys who presently work in Fuquay-Varina formerly worked with and were partners with the late Waverly F. Akins prior to 1995, our law firm has never experienced any customer confusion with regard to these firms. In fact, we have not experienced consumer confusion with anyone other than John W. Akins.

34. Since 1996, our law firm has consistently and without interruption marketed, advertised and promoted its affiliation with the late Waverly F. Akins, and, though our various letterheads and the like have been modified from time to time, we have never ceased to promote our affiliation in this regard.

35. We have never given John W. Akins permission to utilize our trademarks, service marks or trade names, to make statements to the public that he is affiliated with our business or the business of the late Waverly F. Akins, or to capitalize on our business' good will or reputation.

FURTHER SAYETH THE AFFIANT NOT.

This the 29th day of September, 2005.

_____
DONALD G. HUNT, JR.
Affiant

Sworn to and subscribed before me
this 29th day of September, 2005.

_____
Notary Public

My commission expires: 02-23-2009